Okay. Good morning, Your Honors. Valerie Alter on behalf of Defendants Avanti, CHHP Management, and CHHP Holdings, who I'll refer to collectively as the CHHP Defendants. And before we get started, I'd like to request to reserve three minutes for rebuttal. All right. You try to reserve it yourself, but I'll try to remember to give you some kind of notice. Great. Thank you, Your Honor. So I'd like to get started by drawing the Court's attention to two particular points that I think really address the heart of this case. First is that the District Court issued an injunction without any evidence to suggest that irreparable harm was likely. The District Court merely found that the National Labor Relations Board had met its burden to show likelihood of success on the merits, which we obviously dispute, but issued an injunction on that basis alone, essentially assuming irreparable harm in the absence of any evidence of it. And in issuing an injunction under these circumstances, the District Court stepped impermissibly into the shoes of the NLRB, which is my second point. The District Court here issued an injunction without essentially any evidence of harm, which is what would be necessary for it to make a determination regarding union representation. So starting with the irreparable harm issue, there is no evidence of harm here. This case is distinguishable from each of the cases that the Board cites in its brief because there's no evidence of discrimination. For example, there's no evidence in the record that any nurse was not hired because of his or her union affiliation. In fact, the record showed exactly the opposite. The defendants went out of their way to hire and interview any legacy nurses from Carikeon, which is the previous employer. They did in-house interviews. They held a job fair. Anyone who was interested was encouraged to apply, and in fact- What about the Frankel opinion, which was actually quite recent and which directly addresses this question in a very similar context? Yes, Your Honor. I think this case is distinguishable from Frankel for a couple of reasons, so sorry about that. Pointing you to language on, I believe it is page 61 of the slip opinion. The court found in the Frankel opinion that there was actual evidence. I believe the court said substantial evidence in the record to support a likelihood of irreparable harm. In the Frankel case, as I know Your Honor is familiar with as you authored the opinion, there was evidence that employees of the hotel at issue in the Frankel case were losing their jobs. The hotel had engaged in, I believe it was more than 30 bargaining sessions with the union, and there was a finding made that the hotel had engaged in those bargaining sessions in bad faith and was attempting to secure a contract with the union that would essentially render union representation meaningless, and the hotel didn't just stop there. The hotel went ahead and fired five members of the union's negotiating committee, and based on those facts, the court was able to infer from the evidence that people might lose their jobs in the future, that there would be actual evidence of harm. There was evidence of bias. Is that what was actually done in the section of the opinion that is discussing irreparable harm, or instead was the central point that in making the determination of likely harm, inferences from the nature of the particular unfair labor practice at issue remain available, and then a long discussion of why failure to bargain is likely to cause irreparable harm? Your Honor, I would point you to two particular sections in the Frankel opinion, first on page 56 of the slip opinion. It says irreparable injury is established if a likely unfair labor practice is shown, along with a present or impending deleterious effect of the likely unfair labor practice that would likely not be cured by later relief. Then on page 57 of the slip opinion, four lines up. It reads, thus, a finding of likelihood of success as to an 8A5 bad faith bargaining violation in particular, along with permissible inferences regarding the likely effects of a violation, can demonstrate the likelihood of irreparable injury, absent some unusual circumstances. And in those two passages that I just read, there are two particular points that distinguish this case from Frankel and take this case out of the rubric that was laid down in Frankel. The first is a showing of present or impending deleterious effect on page 56, and the second is a finding of bad faith bargaining. There's been no finding of bad faith here at all. In fact, the evidence is quite the opposite. This is essentially a representational issue, and my clients and the board. Isn't this an 8A5, which is a failure to bargain in good faith? It is a failure to bargain, however. Good faith. I don't believe there is any finding in the district court record to show an absence of good faith. What happened is, briefly for the court's reference, our clients purchased a hospital free and clear of a collection of bad faith. So you're saying it was a failure to bargain, and therefore we never get to the good faith. Because you just didn't bargain at all. Well, my client had a good faith belief that the nurses union did not represent him. There wasn't a finding of that either. There was just a finding that they should have bargained and they didn't bargain. I think if you look at the administrative law judge's decision, which the board submitted to the court via letter, there is no reference in there at all to suggest that this was anything. There's no finding one way or another about good faith or bad faith. I think had there been any evidence to suggest that there was bad faith, that would have been in the administrative law judge's opinion. I think in this particular case, my client disagreed with the board as to whether or not union incumbents made up a majority of nurses at community hospital. And it made its count in good faith, and it's disputed the board's determination, and there hasn't been any evidence of it. Well, I don't know if the board decided there was good faith or bad faith, but it did seem to me that there was at least an inference of bad faith based on the fact that your clients were interested in purchasing this hospital out of bankruptcy and entered into the MOU with Care Qion requiring it to get relief from its collective bargaining agreements that it had with the nursing association. So it seemed to me that they secured the release of those contracts so that they wouldn't have to bargain with the nurses association. The injunction issued by the district court that effectively your client would be able not to ever have to negotiate in good faith, even if the board found against it later. Your Honor, I can answer that question in two parts. The first is that the bankruptcy court did actually void the collective bargaining agreements, and with good reason. This was a hospital that was literally on the verge of bankruptcy. I think it was in bankruptcy. It was in bankruptcy, yes. I'm sorry. This was a hospital that was on the verge of closure. That's what I'm getting at. And there was one buyer and one buyer only. That was my clients, and this hospital would have closed its doors, but for the fact that they were agreeing to purchase it. However, a hospital is a business, and they needed to make sure that they would not fall into the same trap that Care Qion fell into, bankruptcy that is, and they needed to make sure that this hospital was financially viable. And the previous CBA with the nurses union provided for things like automatic 6% wage increases on an annual basis. That was A, out of step with the market, and B, threatened the viability of the hospital. So it was not union-animous. So doesn't it suggest that your client, when it took over this hospital, wanted to not have to be, well, not be bound by the collective bargaining agreement, and is there an inference from that that it wouldn't be negotiating with these nurses, notwithstanding the fact that they had hired a substantial number of the very same nurses back? I don't think so, Your Honor. I think the concern was not with the nurses union, qua the nurses union, but rather with the collective bargaining agreement that, as is evident from the Care Qion bankruptcy, was onerous. My client made no effort to discriminate, in fact, did not discriminate in hiring any incumbents. They sought to hire everybody they could. And had the nurses made up a majority of the union members made up a majority of the nurses at community hospital, in my client's view, they would have bargained. And the reason they sought to void or asked Care Qion to void the collective bargaining agreement before purchasing the hospital was not out of animus for the nurses union.  Because it would make very little sense for them to go and buy a hospital that would likely fail. Does that answer your question? But there's a difference between whether there was an agreement that was with which they couldn't operate and whether they could not operate with the union, with bargaining with the union. No, I understand that. I think if I understood Judge Wardlock correctly, she was asking if the fact that my client sought to void the CBA showed a general animus. Yeah, and I don't think it does. So you're not disputing that you were operating and you had hired a substantial number of the nurses who were represented by the CNA? Oh, no, we absolutely dispute that, Your Honor. And that argument is twofold. The first part is the district court looked at the number of nurses and attempted to figure out if we had a reasonable and substantial complement on the wrong date. And the second is that there is an error of numbers. Under California law, we could not have operated a hospital legally with 47 nurses. And that's, we've cited to the California… It looks like, according to the record, you made offers to 62 nurses. I believe we did, yes. Okay. Was that sufficient to operate the hospital? We had always intended to operate the hospital with approximately 65 to 70 nurses. And what was, unfortunately, because of the way this case has proceeded, a lot of this information is not actually before you. And I don't want to go into extra record information, but if you feel it would be helpful to understand a little bit more of the facts in this case, I'm happy to do so. But extra record to this, because the ALJ came to basically the same conclusion. Extra record to this, because the information presented to the ALJ was substantially different and substantial. The ALJ ended up coming to the same conclusion in terms of numbers. Although we have filed exceptions to the ALJ's decision on the grounds that the ALJ fundamentally misapprehended an argument about per diem nurses and whether or not they fell within the scope of the bargaining unit, which takes me back to my initial argument, which is that in the absence of any evidence to suggest irreparable harm, the district court was really taking itself into a very technical issue of bargaining unit scope, bargaining unit definition, and representational issues. And Section 10J was intended to deal with irreparable harm and to preserve the status quo. And in the absence of any evidence of irreparable harm and any need to preserve the status quo while the board operates, the district court impermissibly stepped into waters that are traditionally preserved for the NLRB. Except that the statute has a 10J provision, and the regional director instigated the 10J, so the district court had no choice but to make a decision. Your Honor, the point I'm making is that in a case like this where there is no evidence of discrimination, there's no evidence that anyone lost his or her job, there's, as I would argue, there's no evidence of bad faith. And there's no evidence of irreparable harm. The district court should not have issued this injunction. And by issuing an injunction in the absence of any evidence of irreparable harm, it really put itself in the board's shoes, which it should not have done. If the court has no additional questions for me at this point, I'll reserve. Thank you. May it please the court. Richard Lucere on behalf of the NLRB. The NLRA rights of the RNs are in jeopardy absent an injunction in this case. HTH, or Frankel, is controlling precedent in this matter. I'm sorry, what is? Frankel, the recent Frankel opinion is controlling precedent. With regard to irreparable harm, the union support is going to erode as time goes by and the CNA is not working on behalf of the nurses. The CNA is not protecting the nurses. It's not affecting their terms and conditions of employment. They're going to stop supporting the CNA. And by the time the final board order issues, it's going to be too late. The nurses are going to say. As I understand it, what's being said is, well, that's interesting, but do you need any evidence of that? Well, there is evidence of that in the sense that the harm is inferred from the evidence that supports the likelihood of success on the merits, which is essentially what HTH stands for. You can look to the merits of the violation, and that same exact evidence will be supportive of a finding of irreparable harm. And that's what happened in HTH. Granted, there was some evidence of harm in HTH. But, again, it's the inferences that flow from that violation. I would point the court to a case called, a Seventh Circuit case called Bladorn v. Francisco Foods, a similar type of case. There, there was discrimination, but it was in the successor context. They discriminated in order to avoid their bargaining obligation under Burns. And in that situation, there was no evidence whatsoever of any type of chill among the employees or any type of rebellion among the employees. But the court says the same evidence that established likelihood of success in that case was sufficient to establish irreparable harm. It's the same exact evidence. So there is evidence of irreparable harm. And that's what this court, the exact harms that are threatened in this case were recognized by this court in the Frankel opinion. And in Frankel, it's very similar. It was a withdrawal of recognition, 8A5, withdrawal of recognition. So you're saying that in any case, whether it's a failure to bargain, there's irreparable harm. A failure to bargain is a big deal. Yes, yes. What happens, the mechanics, when there's no bargaining going on and the time passes and the board order comes down. I understand that. What I'm saying is you don't need any particular evidence about this employer or this union. No. The failure to bargain in itself establishes the irreparable harm. Whether there's bad faith, whether there's discrimination, it doesn't matter. The fact that they could be the most benevolent of employers. I mean, they're trying to save this hospital. I understand that. And that's not the point of this case. The point of this case is that, regardless of their benevolence on the other aspect of the case, they have a duty to bargain under Burns. And if they don't do that in the interim. Does the injunction require them to bargain during the interim period? Yes, they must bargain. But they don't have to agree to the prior contract. I understand that. I just asked you whether under the injunction you have to bargain. Yes, they do have to bargain in good faith. Correct. And the failure to bargain without an injunction causes harm. It causes harm because by the time the board order comes down, the disaffection among the employees is not going to be able to be remedied. Those nurses are going to say, look, CNA, what have you done for me? You haven't done anything for me. What have you done for me lately? Well, exactly. What have you done for me since the employer refused to bargain? And by the time that could be quite some time, by the time the board issues its final opinion, it could be a significant amount of time, so the employee is going to say, you haven't done anything for me lately. Correct. I'm not going to support you. And the problem with that is when the board issues its final bargaining order requiring Avante to bargain with the CNA, the bargaining order is going to be meaningless because the CNA needs the support of those nurses in order to bargain effectively. Without that support, it can't strike, it can't picket, it can't hand bill, it has no economic weapons. So Avante will control the negotiations. It will hold all the cards in the negotiations by virtue of its unfair labor practices. And essentially it will defeat the CNA because the CNA won't be able to reach a contract. At some point it's just going to walk away and say, why are we reaching? What's interesting is that there is, in fact, no evidence in the record of any of this, but there's a long 50-year or 60-year history of NLRB experience with this. So, I mean, essentially it seems to me what you're saying is you don't have to redo this in every single case. Correct. Correct. Absolutely. Absolutely. When there is a failure to bargain, the employees as time goes by are just not going to be happy with the union. And by the time the board order comes down, it's too late. It's not too late yet. I mean, right now we have a chance to preserve the CNA's support, to preserve their statutory rights, and to preserve the board's remedial authority, but that won't always be the case. Now is the best chance in order to do that. And the district court recognized that, and that's why the district court granted the injunction in this case. It's one thing for a union to lose. It's one thing for the union to be defeated by virtue of ineffectiveness. It's another thing for the union to be defeated by virtue of an employer's unfair labor practices. And that's what will happen in this case. Because there may be no labor board in December, and we know that the two-person board can't operate, so there may be no decision for years. That is correct. It could be a while. That is correct, exactly, under the Supreme Court's recent opinion. Recent opinion. Yes, yes. So correct. In that regard, the harms are even more pressing in that circumstance. That was a new process deal, the case I was thinking of before the Supreme Court. And, again, this is a successor case. There are many successor cases that have recognized the need for a 10-J injunction. Are there some cases like this in which there have been 10-J injunctions issued in which there was no finding of anti-union discrimination concerning individual employee and no finding of bad faith bargaining? There was a district court opinion, U.S. Marine, a district court opinion from about 20 years ago, Judge Evans, who is now on the Seventh Circuit. That is a case where there was no discriminatory refusal to hire aspect of it. It was just a strict successor refusal to bargain, and the court issued an injunction in that case. That's in your brief? Excuse me? That's in your brief? Yes. So, again, one thing to keep in mind is the board is not asking this previous contract to be put back into place. As the district court recognized, the only obligation that Avante has under this order is to bargain in good faith to good faith impasse or to an agreement. Whatever the contract turns out to be, there's no chance of getting a contract if there's no bargaining. You've got to have bargaining before you get a contract. That is correct. Yes. Yep. So, unless the court has any other questions, I believe the district court has appropriately granted an injunction in this case. Are you going to discuss the merits at all or anything? The merits? With regard to the merits, we have a recent ALJ decision that found that Avante is a successor under Burns and has violated Section 885. I understand that, but I gather that we're going to hear a little more about you using the wrong dates. As far as the dates go, as we set forth in our brief, well, first of all, if you look at the various dates, you have the April date, which Avante used in the ALJ hearing, as I understand it, from the ALJD, where the ALJ found that there was, in fact, a majority of predecessor employees under the April date. Basically, your position is whatever date you use, it comes out the same. Whatever date you use for majority, it comes out the same. Whatever date you use for substantial representative complement, it comes out the same.  Thank you. I have three brief points, Your Honor. First, the Squillacote case, which is the U.S. Marine case, that was not a case that is similar to this in which a district court issued an injunction in the absence of any discrimination. Counsel is correct that there was no discrimination, but in that case, the employer actually admitted that the union represented a majority of the workers at issue. So, in that case, there is no disputed issue as to the likelihood of success on the merits. That doesn't matter. I mean, that goes to the merits, but it doesn't go to the interoperable harm. I think it does matter in that case because there's no disputed issue. The employer is saying, look, you know, if the employer knows that it represents, that the union represents a majority of workers at a particular plant and it knows it's under an obligation to bargain with them and then it doesn't, I think in that type of case, it's fair to infer bad faith because what other reason is there not to bargain with the union when you know you have to? In our case, our clients did account and in good faith. I don't know that it was. There was no finding about good faith by anybody. The issue has never been raised and there's no finding of good faith. It's perfectly possible, frankly, on this record, the fact that there are all different dates and that there were a lot of people put on these lists who don't seem to be the right people and someone that somebody might infer bad faith if anybody ever asked them, but nobody ever asked them, good or bad. Your Honor, I'm just arguing based on the record before us. But you keep saying there was a finding of good faith and there wasn't one. No, there was no finding. I believe that there was an absence of a finding of bad faith. That's what I'm saying. There was an absence of a finding of bad faith and I am arguing that my clients were acting in good faith. My second point I want to pick up on something that Judge Reinhart was saying, and in this case, what the board is arguing is that in every case where they prove a likelihood of success on the merits, irreparable harm is essentially presumed because— No, they're not arguing that. Maybe they are arguing that, but whatever they are arguing, it seems to me that what Frankel suggests and other cases is that there are certain unfair labor practices that over many years have been proven to have certain likely impacts and we don't have to keep doing it over and over again. Your Honor, I think I would argue that that is correct in the case of a discrimination case or if there's some other nefarious conduct on behalf of an employer. Well, that's not just as true as when there's no bargaining going on and the union is not delivering and it's being weakened and the workers are not getting the results that they would be entitled to with good faith bargaining. Why isn't that irreparable harm? Your Honor, I think that there are two parts to that question. The first part is when you're dealing with an instance of bias or in some of these cases that the board has cited where the employer is actively on a campaign against the union. This union is messing you up, employees. This union is causing trouble. If you subscribe to this union, we're going to go ahead and we're going to close this plant. In that case, the employer is actively doing things to diminish the union support and to give members a negative view of the union. Here, by contrast, all that's been said is, look, we don't think you represent a majority of our workers. We're not going to bargain with you at this point. Let's let the NLRB figure it out. That's all that's been done. There's nothing disparaging that's been said to or about the union. There's been nothing done to attempt to— But there's harm because you're not going to get the product of collective bargaining. What happens if you have good faith collective bargaining is you normally ultimately arrive at an agreement, an agreement that benefits the employees. But, Your Honor— And if you don't bargain for a year or two, you're not going to get that contract. I would argue, though, that the injury there is addressable by legal remedies. To the extent that— You're going to give them a contract retroactively? To the extent that the NLRB does ultimately order bargaining, my clients could be ordered to pay back pay from the date they refused to bargain. They could be required to institute— Has that ever happened? What? Has that ever happened? I don't know off the top of my head. There's no—because the notion is that until you have an agreement, you don't know what the agreement would have been. My point is, though, to the extent that we're arguing that the union members would have received benefits, it would be possible that there could be a legal remedy in this case. And I think by adopting— I mean, in fact, this has been a problem with the NLRA from the beginning, of which 10J was supposed to be some fix, and that is that there isn't—I mean, there is retrospective relief with regard to individuals who are discriminated against. But with regard to the bargaining process on gross, in fact, there isn't. And that's why, as I understand it, Congress in 19—whenever it was, 47. 45, I think. I'm sorry, what? I was going to say, I think 45. Yeah, 47. Added 10J really to deal with that problem because the alternative was to start giving retroactive collective bargaining relief, which nobody's ever been willing to do. Your Honor, I think the problem with that in this particular case is that Section 10J is subject to these standard requirements for an injunction. The Supreme Court came down with Winter and said a mere possibility of harm is not enough. We've got a case where, you know, counsel for the board said there's been disaffection. You know, the union members are going to disaffect. It's been a year and a half. But also, during the period that, whatever, year and a half, these people are not getting union representation quite aside from bargaining with regard to anything going on in the workplace. Why is that irreparable harm? There is no evidence, though, on the contrary, you know, to say we can say that maybe they would do better with the union. No, I'm saying that union representation isn't just about at the bargaining table. It's representation with the employer. If there's a discharge, somebody to go talk to people, somebody. I mean, there are other things that unions do when they're on site. And if they're not on site, then the people are not getting that benefit. There's been no evidence in this case, though, that say anybody has been fired and they would have been different had there been a union representative. There's been no evidence that anything has happened that has been adverse to an employee that would have happened differently had there been a union. This is simply a case where the district court found that. How do you ever prove that? What difference does it make whether it's in bad faith or just in the absence of faith? If there's no bargaining, you're not getting the benefits the act was intended to afford you. I think, Your Honor, to assume that, though, is to assume that in every case where you prove likelihood of success on the merits or a district court finds that the board presumes it, Pratt's proven it, then irreparable harm is presumed. And that's contrary to what the Supreme Court said in winter. There may be a possibility of irreparable harm in each of those cases. However, there has to be evidence that actual irreparable harm is likely. Are you abiding by the injunction right now? I can speak to that, Your Honor. Is your client negotiating? Here's what happened. The union sent my client a letter. We responded and said, OK, we'll follow the court's order. They sent us a request for documents. We sent them those documents. That was in April, and we haven't heard a word from them since. So, I mean, I would also argue that the fact that the union's not clamoring down my client's door attempting to bargain. We haven't heard a—we gave them every document. I don't know if we gave them every document, if they would agree to that, but we gave them every reasonable document last April. We haven't heard so much as a peep from them, which I think— Why don't you go back to the district court and ask them to get the injunction because it's not serving a purpose. That's a different issue. Yeah, I think that does go to the irreparable harm issue, though. If the union really believed that its members were in jeopardy, I think they'd be clamoring down my client's door trying to get negotiations started, and we've gotten radio silence since April. So I think that also suggests that perhaps in this case a presumption of irreparable harm based on a failure to bargain without any evidence of discrimination or any evidence of—you know, what I would argue is any evidence of bad faith. I understand Judge Berzon's point that there's been no finding of good faith, but I think in this particular case we'd essentially be letting the district court rubber stamp an injunction based on its perception of a likelihood of success on the merits, which is contrary to the Supreme Court's holding in Winter. I suppose the answer to that depends on what you think of the statute. If you think that the statute gives you valuable rights that you're not afforded when there's no bargaining and no recognition, then if you think it gives you those valuable rights, then there's harm. I wish I could point you to the—there's a case that I know I've read, and I wish I could point you to the name of it, but it's escaping me now. And there is a case out there—I know you probably hear this a lot, but I swear it does exist. And it says that the mere—you know, statutory rights, yes, are valuable, but the mere fact that a district court finds a likelihood of a statutory violation, if a mere deprivation of statutory rights was enough, then there would be irreparable harm based on the first prong alone. If your decision says deprivation or continuing future deprivation of future rights, of rights you presently have, and they're going to continue to deprive you of those rights. But, again, it's the mere fact of the statute grants rights. For example, in a case in which there are First Amendment rights being violated and somebody says, you know, I want to be able to march in some park, and the case law in general says deprivation of First Amendment rights is pretty much irreparable harm because you have the right to speak if you want to speak. Why isn't this similar? Well, that involves the First Amendment, which is constitutional. This is not. I'm actually familiar with the line of cases you're citing, and those, I think, are different. It's not a statutory scheme. This is a statutory violation. We're talking, the First Amendment is a series of fundamental rights, and I think you can argue that deprivation of a fundamental right may be irreparable harm the minute it happens. This is a statutory right, and we're also talking about a situation where, in response to Judge Wardlaw's question, as I explained, the union itself isn't acting like anything is wrong here. Oh, but that's, I mean, that's outside the record and may be a basis, as I say, for going back to the district court. I know it's outside the record. Unfortunately, given the procedural nature of this case, there's a lot of stuff we wish we could have presented to you here, but we can't. I'm saying that there are record, injunctions can be modified, and you could, in fact, go back to the district court and say. In fact, part of the injunction you object to is that you're supposed to make a report to the district court. I assume one of the reasons for that is so that the district court can act if there are changes. Your Honor, we did make that report to the district court. I believe it was ordered to be done 20 days after issuance of the injunction, and at that point. Well, maybe the district court thought 20 days was not enough, but when's your next report? As far as I know, there is no further report. I believe it was a single report at 20 days, just to let the district court know that the parties are complying in good faith, and at that point, my clients had received. Well, as Judge Berzon says, you're certainly free to go back again to the district court. That is true, but we also, I would argue, have an automatic appeal as of right, and I believe that. I understand that, but in terms of things that are outside the record, in terms of what's going on in the ground, we can't deal with that. No, that I do understand. I would still argue, though, that the district court issued injunctive relief based on insufficient evidence of irreparable harm under Winter. Thank you. Thank you, Your Honor. Thank you both very much. The case just argued is the last of the morning, or the afternoon, or the evening. The court will now stand in recess for the day.
judges: Reinhardt, Wardlaw, Berzon